STATE of Iowa, Appellant,

v.

Robert Arthur ALLEN, Appellee.

No. 03–1947.

Supreme Court of Iowa.

Jan. 7, 2005.

---

Thomas J. Miller, Attorney General, Darrell Mullins, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Heather Prendergast, Assistant County Attorney, for appellant.

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellee.

STREIT, Justice.

Sometimes the past does catch up with you. The important issue before us today is whether the Iowa Constitution forbids enhancement of a crime on account of a prior uncounseled misdemeanor conviction for which no term of incarceration was imposed. We hold the Iowa Constitution contains no such bar. We reverse and remand for further proceedings.

## I. Facts and Prior Proceedings

While patrolling a city park, two Waterloo police officers found a man drinking a beer. As the officers arrested the man, Robert Allen interjected. Allen told the man in a profane manner that he did not have to take a breath test. Allen, a self-professed "constitutionalist," was concerned the police would violate the man's right against self-incrimination.

The police officers turned their attention to Allen. Allen was holding a forty-ounce beer bottle in a paper sack, was surrounded by empty beer bottles, and had symptoms of drunkenness—obstreperous behavior, slurred speech, bloodshot eyes, and an odor of alcohol. The police officers arrested Allen for public intoxication.

Discovering Allen had prior convictions for the same crime, the prosecutor charged Allen with third-offense public intoxication, an aggravated misdemeanor. *See* Iowa Code §§ 123.46(2), .91 (2003).[1]

Allen denied the charge, and the court appointed an attorney to defend him.

The district court divided Allen's trial into two stages, separating the issues of public intoxication and enhancement. A jury found Allen was intoxicated in the park.

Before trial proceeded to enhancement, Allen filed a motion to adjudicate points of law. Allen sought to exclude evidence of a prior uncounseled misdemeanor conviction for which no term of incarceration was imposed[2] as unconstitutional. Allen premised his claim solely upon the Iowa Constitution.

Although Allen did not refer to a specific provision in the Iowa Constitution, he relied upon our decision in *State v. Cooper*, 343 N.W.2d 485 (Iowa 1984), and argued generally that our "view of the importance of counsel, as well as [our] belief in the unreliability of uncounseled convictions should preclude enhancement of the . . .

1. The Iowa Code provides that repeat offenders of section 123.46 shall be subject to enhanced charges upon proof of prior convictions. First-offense public intoxication is a simple misdemeanor; second-offense public intoxication is a serious misdemeanor; and third-offense public intoxication is an aggravated misdemeanor. Iowa Code §§ 123.46(2), .91. Enhanced charges may bring, but do not necessarily require, enhanced penalties. The Code provides wide ranges for the sentencing court to consider; these ranges allow for increasingly severe punishments as the offense is repeated. Namely:

*a.* For a simple misdemeanor, there shall be a fine of at least fifty dollars but not to exceed five hundred dollars. The court may order imprisonment not to exceed thirty days in lieu of a fine or in addition to a fine.

*b.* For a serious misdemeanor, there shall be a fine of at least two hundred fifty dollars but not to exceed one thousand five hundred dollars. In addition, the court may also order imprisonment not to exceed one year.

2. When a person is convicted of an aggravated misdemeanor, and a specific penalty is not provided for, the maximum penalty shall be imprisonment not to exceed two years. There shall be a fine of at least five hundred dollars but not to exceed five thousand dollars. When a judgment of conviction of an aggravated misdemeanor is entered against any person and the court imposes a sentence of confinement for a period of more than one year the term shall be an indeterminate term. *Id.* § 903.1(1)-(2).

2. In 2001, Allen was arrested for public intoxication. Allen initially pled not guilty, but as part of the terms of his release he consented to an entry of judgment of conviction and the imposition of a fine if he failed to appear for his trial. *See* Iowa R.Crim. P. 2.72. When Allen did not show up for trial, the district court found him guilty and fined him accordingly. No term of imprisonment, however, was imposed. The parties agree this conviction was uncounseled.

charge." The district court agreed. After Allen stipulated to a prior counseled conviction for public intoxication, the court found him guilty only of second-offense public intoxication, a serious misdemeanor. *See* Iowa Code §§ 123.46(2), .91. The court sentenced Allen to 120 days in jail and imposed a $250 fine. *See id.* § 903.1(1)(*b*). The State appealed.

## II. Scope and Standards of Review

█ Although we generally review claims brought under the Iowa Constitution de novo, *see In re S.A.J.B.*, 679 N.W.2d 645, 647 (Iowa 2004), in this case there is no factual dispute. The only issue is whether the Iowa Constitution forbids use of a prior uncounseled misdemeanor conviction for enhancement of a crime, even when the prior conviction did not itself result in a term of incarceration. The parties agree our review is for errors at law. *State v. Tovar*, 656 N.W.2d 112, 114 (Iowa 2003), *rev'd on other grounds*, 541 U.S. 77, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).

## III. The Use of Prior Uncounseled Misdemeanor Convictions

### A. Legal Background

A little legal history will help set the stage for our discussion of the merits. In *Argersinger v. Hamlin*, the United States Supreme Court interpreted the Due Process Clause of the Fourteenth Amendment to require "that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530, 538 (1972). In *Scott v. Illinois*, the Court reaffirmed this holding

but expressly declined to extend *Argersinger* to defendants in misdemeanor cases where imprisonment was only a possibility in the statute under which the defendant was convicted. 440 U.S. 367, 373–74, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383, 389 (1979).

In *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), the Supreme Court examined the relevance of the *Argersinger/Scott* rule to the ubiquitous use in the states of prior uncounseled misdemeanor convictions to enhance later crimes in anti-recidivism statutes. A plurality of justices appeared to hold that a "prior uncounseled misdemeanor conviction could not be used collaterally to impose an increased term of imprisonment upon a subsequent conviction." *Baldasar*, at 226, 100 S.Ct. at 1587, 64 L.Ed.2d at 173–74. Several justices provided markedly different rationales for the result, however, and lower courts were left divided on how to apply the case. *See Nichols v. United States*, 511 U.S. 738, 743–46, 114 S.Ct. 1921, 1926–27, 128 L.Ed.2d 745, 752–54 (1994).

In *State v. Cooper*, 343 N.W.2d 485 (Iowa 1984), we entered *Baldasar* territory for the first time. The facts and circumstances of *Cooper* are similar to those in the case at bar. We ruled that, where a defendant was not advised of her right to counsel in two prior prosecutions for simple misdemeanor theft, the State could not later use those convictions to enhance a third theft charge to an aggravated misdemeanor.[3] *Cooper*, 343 N.W.2d at 486. In doing so, we rejected the State's contention that *Baldasar* only prevented the use of an uncounseled conviction to later impose *imprisonment* and did not pertain to enhancement of the *charge*. *Id.* We reasoned that "[t]he lack of reliability in an

---

**3.** The defendant was not imprisoned for either prior conviction. *Cooper*, 343 N.W.2d at

486. Because the decision predated *Nichols*, this fact was not deemed relevant at the time.

uncounseled conviction that prevents the imposition of incarceration also prevents the enhancement of the charge." *Id.* We concluded that "the reasoning of *Baldasar* and our own view of the importance of counsel preclude an enhanced conviction as well as a sentence of imprisonment." *Id.*

■ Ten years later the United States Supreme Court partially overruled *Baldasar*. In *Nichols*, the Court held an uncounseled misdemeanor conviction could enhance a later offense *so long as no incarceration was imposed in the first prosecution.* 511 U.S. at 748–49, 114 S.Ct. at 1928, 128 L.Ed.2d at 755. *But see id.* at 748 n. 12, 114 S.Ct. at 1928 n. 12, 128 L.Ed.2d at 755 n. 12 (recognizing states are free to afford more protections to defendants); Iowa R.Crim. P. 2.28. We recognized this change in federal constitutional law last year but were not asked to reconsider *Cooper* in light of *Nichols*. *See Tovar*, 656 N.W.2d at 114.[4]

Litigants caught in the ebb and flow of the United States Supreme Court's rulings in *Baldasar* and *Nichols* learned the fate of *Cooper* in Iowa—at least as a matter of federal constitutional law—this past August. In *State v. Wilkins*, the defendant was charged with third-offense OWI. 687 N.W.2d 263, 264 (Iowa 2004). Before sentencing, the defendant challenged the propriety of the degree of the offense. *Id.* She pointed out that, like the defendant in *Cooper*, she did not have counsel during one of her two prior convictions. *Id.* The State rejoined that the defendant in *Wilkins* was not actually incarcerated for that prior offense, and therefore *Nichols* did not forbid using it for enhancement. *Id.*

After examining *Nichols*, we overruled *Cooper* as a matter of federal constitutional law and held the Sixth and Fourteenth Amendments did not prohibit use of the prior misdemeanor conviction for enhancement because Wilkins was not incarcerated for that earlier offense. *See id.* at 264–65. In ruling, we recognized *Nichols* had overruled the plurality decision in *Baldasar*. *Id.* at 264. We wrote that with respect to federal constitutional law, "an enhancement of a sentence based on prior uncounseled misdemeanor convictions does not violate the Sixth [and Fourteenth] Amendment[s] unless the prior uncounseled offenses actually resulted in imprisonment." *Id.* (citing *Nichols*, 511 U.S. at 746–47, 114 S.Ct. at 1927, 128 L.Ed.2d at 754). Recognizing, then, that *Cooper* was premised upon a "view of the federal constitution [that was] unambiguously rejected in *Nichols*," we overruled *Cooper* in part. *Id.* at 265. As a matter of federal jurisprudence, we were "not at liberty to continue to follow our holding in *Cooper*." *Id.*

In *Wilkins*, we did not decide the issue as a matter of state constitutional law. *Id.* The defendant had not raised this issue in the district court. *Id.* Because Allen has

---

4. In *Tovar*, the continuing validity of *Cooper* in light of *Nichols* was not at issue. Rather, the issue was whether the defendant had validly waived his federal rights in a prior case for which a term of incarceration *was* imposed and for which he did not have the benefit of a lawyer. 656 N.W.2d at 114. A defendant, of course, may waive the right to counsel in a prior conviction so as to permit later enhancement, even if the defendant was not represented by a lawyer. *State v. Moe*, 379 N.W.2d 347, 349 (Iowa 1985). The parties in *Tovar* agreed that if there was not a valid waiver, then *Nichols* forbade enhancement of the later charge based upon what would then be a prior uncounseled conviction for which imprisonment was imposed. 656 N.W.2d at 114. In the case at bar, however, no term of incarceration was imposed; the State also concedes that Allen's prior conviction was uncounseled insofar as he did not validly waive his right to counsel in that case. The extended discussion in *Tovar* concerning what constitutes a valid waiver is not relevant to our task today.

preserved error on his state constitutional claim, we now address the merits of the argument for the first time.

## B. The Iowa Constitution

In the district court, Allen argued use of a prior uncounseled misdemeanor conviction would violate the Iowa Constitution, notwithstanding the advent of *Nichols.* Allen did not, however, cite any specific provision of the Iowa Constitution in support of his claim. Allen simply pointed the district court to our *Cooper* decision, where we stated under nearly identical circumstances that "the reasoning of *Baldasar* and *our own view of the importance of counsel*" precluded enhancement. 343 N.W.2d at 486 (emphasis added). The district court agreed. The court reasoned the aforementioned italicized phrase in *Cooper* indicated that we premised our conclusion in that case upon the Iowa Constitution.

*Wilkins,* however, forecloses this argument. We stated:

Wilkins argues that, because the result in our *Cooper* case was premised in part on "our own view of the importance of counsel," *see* 343 N.W.2d at 486, we should continue to follow that precedent. *Cooper* was commenting on an interpretation of the Sixth Amendment of the federal constitution in which only four justices joined. *Consequently, we believe that the reference to our view of the matter was intended as an affirmation of the view of the Sixth Amendment expressed by the justices in the Supreme Court's plurality opinion.*

*Wilkins,* 687 N.W.2d at 265 (emphasis added, footnote omitted); *see Moe,* 379 N.W.2d at 349 (viewing decision in *Cooper* as an application of the *federal* constitution). Because *Cooper* was only intended as an affirmation of a then-existing interpretation of the *federal* constitution, the district court incorrectly used it to ground Allen's state constitutional claim. *See Wilkins,* 687 N.W.2d at 265.

On appeal, Allen maintains that even if *Cooper* did not rely upon the Iowa Constitution, we should nevertheless construe the Iowa Constitution to bar introduction of all prior uncounseled misdemeanor convictions. In doing so, he resurrects a general theme present in his argument to the district court: namely, that we are free to construe the Iowa Constitution more broadly than the federal constitution. Allen points to two recent decisions which, he claims, show we are "dedicated to ... expanding the personal liberties of Iowans." *See State v. Daly,* 623 N.W.2d 799, 801 (Iowa 2001); *State v. Cline,* 617 N.W.2d 277, 292–93 (Iowa 2000).

■ While it is true that in *Daly* and *Cline* we disagreed with the reasoning of the United States Supreme Court, standing alone this mere fact of past disagreement does not mean we are, as a general proposition, "dedicated to ... expanding the personal liberties of Iowans." Rather, we are simply charged with a solemn duty as the highest court of this sovereign state to interpret the Iowa Constitution. *See Racing Ass'n v. Fitzgerald,* 675 N.W.2d 1, 4 (Iowa 2004) (hereinafter *RACI II* ). When presented with sound reasons to do so, we will not hesitate to distinguish the protections afforded by the Iowa Constitution from those of the federal constitution. *Cf. Pfister v. Iowa Dist. Ct.,* 688 N.W.2d 790, 795 (Iowa 2004) ("Because the parties have articulated no basis for distinguishing" them, state and federal constitutional guarantees "appl[y] equally."); *In re Detention of Garren,* 620 N.W.2d 275, 280 n. 1 (Iowa 2000) (enunciating similar maxim; defendant had not "offered an alternative test or guidelines"). The United States Supreme Court's decisions are not binding upon us when faced with a corresponding

claim under the Iowa Constitution. *See State v. Olsen,* 293 N.W.2d 216, 219 (Iowa 1980) (citing *Bierkamp v. Rogers,* 293 N.W.2d 577, 579 (Iowa 1980)).

Once the irrelevance of *Cooper* to the state constitutional issue is demonstrated, it becomes difficult to discern a persuasive reason to depart from *Nichols* in Allen's arguments to the district court or in the district court ruling itself. Perhaps because both Allen and the district court thought *Cooper* squarely controlled, neither cited a single provision in the Iowa Constitution.[5] That said, Allen did argue generally in the district court that our "view of the importance of counsel, as well as [our] belief in the unreliability of uncounseled convictions should preclude enhancement of the . . . charge." In light of this statement, the nature of Allen's appeal brief, and (as we shall later see) how other state supreme courts have framed the issues, we consider two provisions in our analysis: the state constitutional rights to counsel and due process. *See* Iowa Const. art. I, §§ 9, 10. In order to justify a different result under our state constitution, then, there must be some principled basis for distinguishing at least one of these two provisions from the federal law as enunciated in *Nichols.*

■ We find no persuasive reason to disagree with *Nichols* on the facts and arguments presented in this case, and therefore we decline to interpret the Iowa Constitution to afford more protection than the federal constitution with respect to the use of prior uncounseled misdemeanor convictions. We begin by pointing out that the state right-to-counsel and due-process provisions are textually similar to their federal counterparts. *Compare* U.S.

Const. amends. VI, XIV, *with* Iowa Const. art. I, §§ 9, 10. *But see RACI II,* 675 N.W.2d at 5 n. 2 (recognizing "significant differences" in text of state and federal equal protection clauses). For this reason, past construction of the federal constitution, including *Nichols,* is persuasive in our interpretation of the corresponding provisions of the Iowa Constitution. *Cf. Olsen,* 293 N.W.2d at 219 (citing *Bierkamp,* 293 N.W.2d at 579). Nor do we detect a trend in our sister state courts to abandon the federal analysis. A strong majority of the states that have analyzed uncounseled misdemeanor convictions under their state constitutional rights to counsel and due process have declined to forge new and different ground. *See, e.g., State v. Thrasher,* 783 So.2d 103, 105–06 (Ala.2000) (due process); *State v. Delacruz,* 258 Kan. 129, 899 P.2d 1042, 1045–47 (1995) (state constitution generally); *State v. Cook,* 706 A.2d 603, 604–05 (Me.1998) (due process); *People v. Reichenbach,* 459 Mich. 109, 587 N.W.2d 1, 4–7 (1998) (right to counsel); *State v. Weeks,* 141 N.H. 248, 681 A.2d 86, 88–89 (1996) (right to counsel and due process); *State v. Woodruff,* 124 N.M. 388, 951 P.2d 605, 616 (1997) (due process); *State v. Porter,* 164 Vt. 515, 671 A.2d 1280, 1284 (1996) (right to counsel and due process); *State ex rel. Webb v. McCarty,* 208 W.Va. 549, 542 S.E.2d 63, 67 (2000) (right to counsel). Those states that have parted ways with the majority appear to have done so because the right-to-counsel guarantee in their state constitutions is worded more broadly than our article I, section 10. In such states, the literal language of the right-to-counsel provision demands that the right attaches in any case where the statute under which the defendant is

---

**5.** Indeed, the fact *Cooper* did not contain any such reference is consistent with our decision in *Wilkins* that *Cooper* did not express a view of the Iowa Constitution; if *Cooper* was decided on such a basis, one would expect to find reference to a provision of the Iowa Constitution in it.

charged *authorizes the possibility of incarceration;* as a consequence, the prior uncounseled conviction is itself invalid as a matter of state constitutional law. *See, e.g., State v. Deville,* 879 So.2d 689, 690 (La.2004) (citing La. Const. art. I, § 13 (affording state constitutional right to counsel in all cases where the accused is "charged with an offense punishable by imprisonment")); *see also State v. Sinagoga,* 81 Hawai'i 421, 918 P.2d 228, 239–41 (Ct.App.1996). Iowa's right-to-counsel guarantee contains narrower language, and we have not previously interpreted it to afford broader protection than the *Argersinger/Scott* "actual imprisonment" standard. *See, e.g., McNabb v. Osmundson,* 315 N.W.2d 9, 13 (Iowa 1982) (declining to rule on issue).

### Article I, Section 10: The Iowa Right to Counsel

■ Lastly, in separately examining Allen's state constitutional rights to counsel and due process, we find no flaws in the federal analysis. With respect to Allen's right to counsel under Iowa's article I, section 10, use of a prior conviction to enhance his present conviction plainly "do[es] not change the penalty imposed for the earlier conviction." *Nichols,* 511 U.S. at 747, 114 S.Ct. at 1927, 128 L.Ed.2d at 754. That is, although enhancement may result in a longer period of incarceration for the subsequent offense, this mere fact does not retroactively—and hence unconstitutionally—impose a period of incarceration for the prior offense.

> The reason[s given] for holding that the accused is not again punished for the first offense [are] . . . that the punishment is for the last offense committed, and it is rendered more severe in consequence of the situation into which the party had previously brought himself; . . . that the statute imposes a higher punishment for the same offense upon

one who proves, by a second or third conviction, that the former punishment has been inefficacious in doing the work of reform, for which it was designed; . . . that the punishment for the second is increased, because, by his persistence in the perpetration of crime, he has evinced a depravity, which merits a greater punishment, and needs to be restrained by severer penalties than if it were his first offense; and . . . that it is just that an old offender should be punished more severely for a second offense, that repetition of the offense aggravates guilt.

*Moore v. Missouri,* 159 U.S. 673, 677, 16 S.Ct. 179, 181, 40 L.Ed. 301, 303 (1895) (citations and internal quotations omitted). We have consistently held that repeat-offender laws penalize only the last offense committed by the defendant and for this reason do not offend the Iowa Constitution. *See, e.g., State v. Norris,* 203 Iowa 327, 328–29, 210 N.W. 922, 923 (1926) (recidivist statute did not offend Iowa constitution); *State v. Dowden,* 137 Iowa 573, 576, 115 N.W. 211, 212 (1908) (same); *see also State v. Gaskey,* 255 Iowa 967, 971–73, 124 N.W.2d 723, 725–26 (1963) (sustaining recidivist statute from constitutional challenge; statute did not punish defendant a second time for prior offense). Had Allen not reoffended, he would not face any imprisonment; the imprisonment he may yet suffer would "punish[ ] him solely for his [repeat] offense, and in no way adds to or alters the penalty he received for his initial . . . conviction." *Cook,* 706 A.2d at 606.

### Article I, Section 9: The Iowa Right to Due Process

■ Nor do we find any flaws in the federal analysis as applied to Allen's right to due process under the Iowa Constitution. Use of Allen's prior uncounseled misdemeanor conviction is not so inherent-

ly unreliable that its use under a recidivist statute would abridge article I, section 9. *Cf. Woodruff,* 951 P.2d at 613–16 (viewing question as one of due process and finding no state constitutional infirmity). However more reliable it may have been had counsel appeared, the fact remains that in Iowa Allen's prior conviction is reliable enough for the conviction and punishment imposed in that case. Indeed, to rule against the use of such a conviction would render it an illogical "hybrid conviction," reliable for its own attendant punishment, but oddly *not* reliable for enhancement or sentencing[6] in later prosecutions. *Cf. Nichols,* 511 U.S. at 744–45, 114 S.Ct. at 1926, 128 L.Ed.2d at 753.

■ Due process is a flexible standard under which a court must balance the costs and benefits of additional procedural safeguards. Namely, we must consider:

(1) the private interest that will be affected by the government action;

(2) the risk of the erroneous deprivation of the interest, and the probable value of additional procedures; and

(3) the government interest in the regulation, including the burdens imposed by additional procedures[.]

*Sorci v. Iowa Dist. Ct.,* 671 N.W.2d 482, 491 (Iowa 2003) (citations omitted). Balancing these factors, we conclude that any marginal gain in reliability is outweighed by the costs of ruling otherwise. *Cf. Woodruff,* 951 P.2d at 613–16 (arriving at same conclusion); *Porter,* 671 A.2d at 1285 (Morse, J., concurring) ("[I]t comes down to a matter of judgment from experience. In my judgment, the requirement that

counsel be afforded to all indigent … defendants in order to effectuate [a] recidivist statute is simply too big a price to pay for the relatively small marginal gain in 'reliability.' "). A prior uncounseled misdemeanor conviction is, after all, a conviction; as such, a certain degree of reliability already attends it. While we do not think—as the State appears to suggest—that a ruling to the contrary would wreak havoc upon the court system, such a decision would impose significant additional burdens on the criminal justice system for a only marginal gain in reliability. A majority of other state supreme courts, in addition to the United States Supreme Court, have determined due process does not demand such a trade-off, and we agree with them. Of course, a sentencing "court may consider in fashioning the sentence that an uncounseled prior … conviction may have been less reliable." *Porter,* 671 A.2d at 1285 (Morse, J., concurring).

■ In sum, we hold the Iowa Constitution does not bar use of prior uncounseled misdemeanor convictions for later enhancement where the prior conviction did not itself result in a term of incarceration.

## IV. Other Issues

Allen raises a panoply of other issues on appeal not directly relevant to the primary task before us. Among these arguments, Allen apparently claims his trial counsel—although successful in obtaining exclusion of the challenged conviction—was ineffective. We do not discuss these issues, finding they are either premature or lack merit.

---

**6.** As we pointed out in *Cooper,* the reliability concerns are the same whether the issue is one of enhancement or sentencing. 343 N.W.2d at 486. There is also, we think, "a relatively low risk of error in using an un-

counseled misdemeanor conviction for purposes of enhancement in comparison with other factors courts typically use in sentencing." *Woodruff,* 951 P.2d at 616.

## V. Conclusion

The Iowa Constitution does not forbid use of a prior uncounseled misdemeanor conviction for enhancement of a later conviction, so long as the defendant was not incarcerated for the prior conviction. We reverse and remand for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**