2001 WY 88

**Bennie J. MOGARD, Appellant (Defendant),**

v.

**CITY OF LARAMIE, Appellee (Plaintiff).**

No. 00–217.

Supreme Court of Wyoming.

Sept. 24, 2001.

R. Michael Vang of Kirkwood, Nelson & Vang, Laramie, WY, Representing Appellant.

Devon O'Connell Coleman of Corthell and King, P.C., Laramie, WY, Representing Appellee.

Gay Woodhouse, Attorney General; Vicci Colgan, Chief Deputy Attorney General; Martin Hardsocg, Assistant Attorney General; and Matthew J. Fermelia, Special Assistant Attorney General, Cheyenne, WY, Representing State of Wyoming as Amicus Curiae.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶1]  The appellant, Bennie J. Mogard, was arrested in Laramie for driving while under the influence.  Upon being advised of the implied consent to chemical testing provisions of Wyo. Stat. Ann. § 31–6–102(a)(ii) (LexisNexis 2001), the appellant asked to speak to an attorney before submitting to the test.  That request was denied.  Subsequently, based upon this denial, he filed a Motion to Suppress Breath Test in the municipal court.  Citing *Wheeler v. State,* 705 P.2d 861, 863 (Wyo.1985), the municipal judge denied the motion on the ground that there is no constitutional right to counsel prior to taking a breath test.  The appellant then utilized W.R.Cr.P. 11(a)(2) to enter a conditional guilty plea, preserving his right to appeal the specific issue raised in his motion.

[¶2]  In the district court, the appellant and the City of Laramie filed a Joint Motion for Certification of Question to the Wyoming Supreme Court.  The district court obliged with an Order Certifying Question to the Wyoming Supreme Court.  This Court agreed to accept certification, and we granted leave to the State of Wyoming to file a brief as *amicus curiae.*

### THE CERTIFIED QUESTION

Does Article 1, Section 10 of the Wyoming Constitution give a defendant a limited right to consult with an attorney before deciding whether or not to submit to chemical testing for blood alcohol?

### THE STATUTORY CONTEXT

■ [¶3]  Wyo. Stat. Ann. § 31–5–233 (LexisNexis 2001) forbids what is commonly known as driving while under the influence (DWUI).[1]  Wyo. Stat. Ann. § 31–6–102(a)(i) provides that, when someone is arrested for

---

1.  As used herein, DWUI refers to any allegation under Wyo. Stat. Ann. § 31–5–233 to which the implied consent statutes apply.

DWUI, he is "deemed to have given consent, subject to the provisions of this act, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol concentration or controlled substance content of his blood." Before a chemical test may be administered to the arrested person, he must be advised of certain legal effects of either taking or refusing to take the test. Wyo. Stat. Ann. § 31–6–102(a)(ii). These implied consent statutes are the exclusive procedures to be followed in determining the blood-alcohol level of a person arrested for DWUI. *Van Order v. State*, 600 P.2d 1056, 1058 (Wyo.1979) (*citing State v. Chastain*, 594 P.2d 458, 461 (Wyo.1979), *overruled on other grounds by Olson v. State*, 698 P.2d 107 (Wyo.1985)).

## STATE CONSTITUTIONAL ANALYSIS

[¶ ] This Court has previously held that neither the Fifth nor the Sixth Amendments to the United States Constitution grants an accused a right to counsel before deciding whether to submit to chemical testing upon an arrest for DWUI. *Nesius v. State Dept. of Revenue and Taxation, Motor Vehicle Div.*, 791 P.2d 939, 942–44 (Wyo.1990); *Wheeler*, 705 P.2d at 863–64. However, in several cases in recent years, we have indicated an interest in performing a separate state constitutional analysis when issues arise under both the federal and state constitutions. That is what the appellant now seeks.

[¶ ] Our "separate state constitutional analysis" jurisprudence has undergone a fairly rapid transformation. *Saldana v. State*, 846 P.2d 604 (Wyo.1993), illustrates the various views of state constitutional analysis then held by members of this Court. The primary issue in *Saldana* was the reasonableness of a search and seizure. Interestingly enough, Saldana raised this issue solely under Wyo. Const. art. 1, § 4, rather than the Fourth Amendment to the United States Constitution. Writing for the majority, Justice Thomas relied almost exclusively on the Fourth Amendment and federal precedent in finding the search and seizure constitutional, and he dismissed the notion of finding any greater protections in the state constitution.

*Saldana*, 846 P.2d at 610–12. In a special concurrence, however, Justice Macy forcefully rejected "the idea that in the future we will blindly follow the United States Supreme Court's interpretation of the Fourth Amendment to the United States Constitution when we interpret the Wyoming Constitution." *Saldana*, 846 P.2d at 621 (Macy, J., specially concurring). Perhaps even more forcefully, Justice Urbigkit issued a forty-page dissenting opinion, in which he dismissed the idea that state constitutional provisions necessarily were meant to mirror their federal counterparts. *Id.* at 624–64 (Urbigkit, J., dissenting). Finally, Justice Golden concurred, but identified an "analytical technique" whereby litigants could, in the future, present a separate state constitutional analysis. *Id.* at 621–24 (Golden, J., concurring).[2]

[¶ 6] Three years later, in a unanimous opinion, this Court rejected a separate state constitutional analysis of a search and seizure issue, but only because the "assertion, unaccompanied by authority or argument, is insufficient to persuade us to consider whether the Wyoming Constitution's Art. 1, § 4 should be independently interpreted as offering greater protection than its federal counterpart." *Gronski v. State*, 910 P.2d 561, 565 (Wyo.1996). *See also Guerra v. State*, 897 P.2d 447, 451 (Wyo.1995) (limiting the application of separate state constitutional analysis to the extent the appellant actually developed the analysis). Finally, in *Vasquez v. State*, 990 P.2d 476 (Wyo.1999), the separate state constitutional analysis doctrine met up with an appellant prepared to utilize the analytical technique identified in Justice Golden's concurrence in *Saldana*. *Vasquez* represents a significant step in the development of state constitutional analysis in Wyoming, inasmuch as it finds the same to be "required unless a party desires to have an issue decided solely under the Federal Constitution." *Vasquez*, 990 P.2d at 485.

## APPLYING THE *SALDANA* TEST

[¶ 7] We should not lose focus of the limited issue before us. We determined in *Wheeler*, 705 P.2d at 863, that the Sixth

2. The details of this "analytical technique" will be discussed later herein.

Amendment to the United States Constitution, which reads as follows, does not create a right to counsel before a DWUI arrestee decides whether to take a chemical test:

> *In all criminal prosecutions, the accused shall enjoy the right* to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and *to have the Assistance of Counsel for his defence.*

(Emphasis added.) The question we now face is whether Wyo. Const. art. 1, § 10, which reads as follows, provides such a right:

> *In all criminal prosecutions the accused shall have the right to defend* in person and *by counsel,* to demand the nature and cause of the accusation, to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process served for obtaining witnesses, and to a speedy trial, by an impartial jury of the county or district in which the offense is alleged to have been committed. When the location of the offense cannot be established with certainty, venue may be placed in the county or district where the corpus delecti [delicti] is found, or in any county or district in which the victim was transported.

(Emphasis added.) We will answer the question by applying the six criteria identified in *Saldana,* 846 P.2d at 622 (Golden, J., concurring):

1. The textual language.
2. The differences in the texts.
3. Constitutional history.
4. Pre-existing state law.
5. Structural differences.
6. Matters of particular state or local concern.

## TEXTUAL LANGUAGE/DIFFERENCES IN THE TEXTS/STRUCTURAL DIFFERENCES

[¶ 8] These three factors are intertwined. Juxtaposition of the emphasized phrases from the two constitutional provisions reveals that they are substantially similar in wording. Another similarity is that the right to counsel is one right among several others, those others also being substantially similar between the two constitutional provisions. A notable similarity is that the right to counsel exists under both constitutions "in all criminal prosecutions."

[¶ 9] One difference between the two provisions is that the right to counsel is the last right listed in the Sixth Amendment, while it is the first right listed in Wyo. Const. art. 1, § 10. The appellant contends that, by placing the right to counsel at the beginning of the provision, the framers of the Wyoming Constitution meant to give it "special significance." He presents no authority for this proposition. We are not convinced that constitutional protections should be given different values or priorities based solely upon their placement in the document. Likewise, the slight textual differences between the Sixth Amendment and Wyo. Const. art. 1, § 10 demonstrate little. *Vasquez,* 990 P.2d at 485. In short, we cannot discern from the text or structure of Wyo. Const. art. 1, § 10 any intent to offer greater protection than the Sixth Amendment.

## CONSTITUTIONAL HISTORY

[¶ 10] As every American schoolchild should know, our federal constitution was adopted in the years after the Revolutionary War to supplant the Articles of Confederation, the Articles having failed to create a sufficiently strong national government. Not everyone was convinced, however, that a strong national government was necessarily a good thing, so the Bill of Rights—the first ten amendments—was added to ensure that this new government did not interfere with the identified rights. A hundred years later, when Wyoming adopted its constitution, the rights of the people were "declared" in the first article of that document, rather than being appended as amendments.

[¶ 11] In his brief, the appellant recites at length the debates of the Wyoming Constitutional Convention as they appear in the *Journal and Debates of the Constitutional Con-*

*vention of the State of Wyoming* (1889). While this effort is laudable, it casts little light on the comparison between the right to counsel under the Sixth Amendment and the right to counsel under Wyo. Const. art. 1, § 10. Ironically, the one material revelation noted from the *Journal and Debates* is that, on September 26, 1889, Art. 1, § 10 was amended by a majority vote upon the following recommendation:

> Mr. CAMPBELL: I have another amendment which I wish to offer. Sec. 10, I believe that was not amended. Now, Mr. President, I don't think this committee here can improve on the language of the United States statute on this subject, and I therefore move to amend by striking out the words "to meet the witnesses opposed face to face," and put in the language which everybody understands, "to be confronted with the witnesses against him." That is the language that has been passed upon by the courts, and we all know what it means.

*Journal and Debates* at 726. The replacement language is, of course, not the language of a "United States statute," but is the language found in the Sixth Amendment. In this instance, at least, Wyo. Const. art. 1, § 10 was pointedly drafted to mirror the words and intent of the Sixth Amendment.

[¶ 12] In truth, there is little that constitutional history can do to help answer the question before us:

> No state constitutional history exists which would lead us to believe that Wyoming initially included individual rights as a strong statement of societal values or because it intended to provide greater protection of individual rights. The most that can be definitely ascertained from the differences in the constitutional histories of the two documents may well be explained by the simple fact that it was the prevailing view that protection of individual rights was considered to be the province of the state and the federal rights acted only

upon the federal government, and the Wyoming drafters acted accordingly.

*Vasquez,* 990 P.2d at 484 (*citing State v. Peterson,* 27 Wyo. 185, 213, 194 P. 342, 350 (1920)). The Bill of Rights has its roots in the years of conflict between Britain and the colonies, and in the hundreds of years of development of Anglo–American law. The parties have not brought to our attention any events or circumstances in Wyoming in the latter half of the nineteenth century from which we may infer an intent that the protections contained in Wyo. Const. art. 1, § 10 were meant to be more broad than their counterparts in the Sixth Amendment.

### PRE-EXISTING STATE LAW

[¶ 13] The six factors identified in *Saldana* were taken from *State v. Gunwall,* 106 Wash.2d 54, 720 P.2d 808, 811 (1986). *Saldana,* 846 P.2d at 622 (Golden, J., concurring). The *Gunwall* court gave the following justification for looking to pre-existing state law to help determine the relative breadth of state constitutional protections:

> Previously established bodies of state law, including statutory law, may also bear on the granting of distinctive state constitutional rights. State law may be responsive to concerns of its citizens long before they are addressed by analogous constitutional claims. Preexisting law can thus help to define the scope of a constitutional right later established.

*Gunwall,* 720 P.2d at 812.

[¶ 14] The appellant's investigation into Wyoming's pre-constitutional law focuses upon portions of the territorial criminal code in effect just prior to statehood. He cites numerous statutes in outlining the complaint and warrant, indictment, arrest, preliminary hearing, and arraignment procedures established in that code.[3] Unfortunately, there is little in the appellant's analysis, or in the Revised Statutes of Wyoming of 1887 for that matter, that does much to aid us in comparing the Sixth Amendment to Wyo. Const. art. 1, § 10. In fact, the almost complete lack of

---

**3.** The Revised Statutes of Wyoming of 1887 contained fifty-four titles. Title 39 was entitled "Procedure—Criminal." The separate chapters in Title 39 with potential relevance to our inquiry are Chapter 3 (Arrest), Chapter 4 (Examina- tions), Chapter 6 (Grand jury proceedings), Chapter 7 (Indictments and process thereon), and Chapter 8 (Pleas to indictment—Arraign- ment—Change of venue).

any mention of a defendant's right to counsel in the 1887 code may be the most revealing aspect of this analysis. No statement of, or recognition of, any exceptional right to an attorney can be found. The only references to the defendant's attorney occur in Wyo. Rev.Stat. ch. 8, §§ 3258 and 3259 (1887), which deal with the service of a grand jury indictment upon a defendant or his attorney, and the bringing of the defendant into court, where an attorney will be appointed for him if he is indigent. Since the succeeding sections detail the formal responses to the indictment available to the defendant—motion to quash, plea in abatement, demurrer, and plea on the merits—it seems clear that the statutory intent is to allow the defendant to have the advice of counsel in making these "plea" decisions. Wyo.Rev.Stat. ch. 8, §§ 3260–3275 (1887). *See James v. State*, 27 Wyo. 378, 196 P. 1045, 1046 (1921). There is nothing in the 1887 criminal code from which we could conclude that, in the state constitution adopted a few years later, the framers meant something broader in their use of the phrase "in all criminal prosecutions" than did the framers of the United States Constitution.

### MATTERS OF PARTICULAR STATE OR LOCAL CONCERN

[¶ 15] Once again, it is helpful to refer to *Gunwall* in applying this factor:

> Is the subject matter local in character, or does there appear to be a need for national uniformity? The former may be more appropriately addressed by resorting to the state constitution.

*Gunwall*, 720 P.2d at 813 (footnote omitted). As examples of matters of local concern, the *Gunwall* court cites to *Coyle v. Smith*, 221 U.S. 559, 31 S.Ct. 688, 55 L.Ed. 853 (1911) ("each state has the power to locate its own seat of government, to determine when and how it shall be changed from one place to another, and to appropriate its own public funds . . .") and *Cooley v. Board of Wardens of Port of Philadelphia, to Use of Soc for Relief of Distressed Pilots, Their Widows and Children,* 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1851) ("pilotage does not require uniform national rule"). *Gunwall*, 720 P.2d at 813 n. 11.

[¶ 16] The subject matter here, of course, is the right to counsel prior to chemical testing in a DWUI prosecution. Unlike the location of the seat of a local government, or pilotage rules, the right to counsel is a fundamental personal right identified in both the federal and the state constitutions. In that regard, we have previously held that, while the federal constitution sets the minimum standards to be followed, states are free under their own constitutions to "enlarge" rights. *Shongutsie v. State*, 827 P.2d 361, 367 (Wyo.1992), *receded from on other grounds by Murray v. State*, 855 P.2d 350 (Wyo.1993) (*quoting Richmond v. State*, 554 P.2d 1217, 1223 (Wyo.1976)). At the same time, however, it cannot be said that the right to counsel in the chemical testing situation is particularly a matter of local or state concern, so no presumption or inference arises that the state would have some particular interest in setting a different standard than did the framers of the federal constitution. All citizens of every state in the union share the need for this protection. Stated conversely, we know of nothing to suggest that the people of Wyoming are in greater need of the right to counsel under these circumstances than are the people of any other state.

[¶ 17] The appellant contends in his brief that the more limited matter of particular state concern is driving while under the influence.[4] Rather than developing that independent theme, however, he argues the importance to any arrested person of the availability of counsel. But to follow up on the appellant's theme, we note that we have previously identified the objectives of the implied consent laws:

> " '(1) to discourage individuals from driving an automobile while under the influence of

---

4. In determining whether a state constitutional provision was drafted with particular matters of local interest in mind, we first look to matters that existed when the constitution was drafted. At the same time, however, we must apply the constitution's language in the context of the times in which we live. *See Chicago & N.W. Ry. Co. v. Hall*, 46 Wyo. 380, 391, 26 P.2d 1071, 1073 (1933).

intoxicants[;] (2) to remove the driving privileges from those individuals disposed to driving while inebriated[;] and (3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication.' "

*Farmer v. State, Dept. of Transp.*, 986 P.2d 165, 167 (Wyo.1999) (*quoting Department of Licensing v. Lax*, 125 Wash.2d 818, 888 P.2d 1190, 1193 (1995)). We also concluded that a delay in chemical testing " 'generally favors the DWI suspect by giving time for the body to "burn off" alcohol.' " *Farmer*, 986 P.2d at 167 (*quoting Lax*, 888 P.2d at 1193). We have made it clear that the implied consent statutes are meant to assist the state in achieving these objectives, not to give additional rights to arrestees:

> "The implied Consent Law was not designed to give greater rights to a suspected drunken driver than were constitutionally afforded before its passage. Its purpose was intended to impose a condition on the right to operate a motor vehicle on the streets and highways of this state. The condition requires that a driver, by so operating a vehicle in Wyoming, consents to submit to chemical tests for intoxication under statutorily determined circ[u]mstances. The refusal to submit to a test can result in revocation of a driver's license. It was intended to facilitate the tests for intoxication and not to inhibit the ability of the state to remove drunken drivers from the highways of our state. In light of this purpose, it must be liberally construed to effectuate its policies."

*State v. Marquez*, 638 P.2d 1292, 1294 (Wyo. 1982), *overruled on other grounds by Olson v. State*, 698 P.2d 107 (Wyo.1985) (*quoting Chastain*, 594 P.2d at 461). The policy considerations behind the implied consent statutes would seem to mitigate against finding a particular state need or desire to enlarge the right to counsel in this context.

[¶ 18] The right to counsel is only one of many protections afforded by both the United States Constitution and the Wyoming Constitution. Over the years, this Court has been called upon many times to analyze different rights under both constitutions. The result has not exactly been a seamless web of constitutional analysis. A few examples may suffice. In *State v. Keffer*, 860 P.2d 1118, 1129 (Wyo.1993), where the issue was double jeopardy in the context of a requested lesser included offense instruction, we stated that Wyo. Const. art. 1, § 11 "assures the same protection as" the Fifth Amendment to the United States Constitution. In adopting the statutory elements test for lesser included offenses, we then followed United States Supreme Court guidance. Two years later, however, in analyzing a defendant's right not to incriminate himself under the same state constitutional provision and the Fifth Amendment to the United States Constitution, we noted the "broader protections" of our state constitution and reiterated our abandonment of the federal due process analysis in "comment-upon-silence" cases. *Tortolito v. State*, 901 P.2d 387, 389–90 (Wyo.1995) (*citing Clenin v. State*, 573 P.2d 844 (Wyo.1978), *overruled on other grounds by Richter v. State*, 642 P.2d 1269 (Wyo.1982)).[5]

[¶ 19] In two cases in 1999, this Court recognized some difficulties in applying the *Saldana* factors in Wyoming. In *Vasquez*, 990 P.2d at 483–84, we stated:

> Those courts independently analyzing their state constitutions to determine the permissible scope of an automobile search incident to the arrest of its driver or passengers usually have either a long tradition of such independent analysis or have sufficient constitutional history to permit departing from federal precedent through principled reasoning.
>
> In the case of Wyoming's search and seizure provision, there is little constitutional history available to provide clues as

---

**5.** Three years before *Clenin*, while finding that the right not to be a witness against oneself was "firmly established in this state," and was not the "peculiar province" of the federal courts, we at the same time recognized that the right is "an-

cient," which seems to imply that it also is not the "peculiar province" of the state constitution. *Dryden v. State*, 535 P.2d 483, 490–93 (Wyo. 1975).

to the framers' intent when drafting it. Further hampering our analysis is the fact that this Court both initiated and then all but abandoned independent analysis of the state constitutional provision during the 1920s and 1930s and began determining search and seizure issues under the Fourth Amendment with strict adherence to United States Supreme Court decisions.

Despite the disclaimer, this Court concluded that the "national citizenry rationale" of federal precedent did not fit Wyoming, adopting instead a "narrower application" of the automobile search incident to arrest doctrine. *Vasquez,* 990 P.2d at 489. A month later, in *Almada v. State,* 994 P.2d 299, 308 (Wyo. 1999), we again pointed out that Wyoming is lacking in both a long tradition of state constitutional analysis and sufficient constitutional history to allow departure from federal precedent. We concluded that, "[a]lthough we are not bound by the Fourth Amendment decisions of the United States Supreme Court in this case, we may certainly follow its lead when we find its reasoning persuasive." *Almada,* 994 P.2d at 309. We then adopted that federal reasoning in finding that "participant monitoring" of conversations does not violate the Wyoming Constitution. *Almada,* 994 P.2d at 311.

[¶ 20] Analysis of the specific issue before the Court—whether Wyo. Const. art. 1, § 10 gives a DWUI arrestee a limited right to counsel before deciding whether to take a breathalyzer test—must begin with *Wheeler,* 705 P.2d 861. As mentioned previously herein, *Wheeler* held that there is no such right under the Sixth Amendment to the United States Constitution. *Wheeler,* 705 P.2d at 863. The opinion in *Wheeler,* 705 P.2d at 863, does not directly reference the Sixth Amendment, but the cases from other states relied upon in the decision are Sixth Amendment cases which utilize a "critical stage" analysis. *See Svedlund v. Municipality of Anchorage,* 671 P.2d 378 (Alaska App. 1983) and *State ex rel. Webb v. City Court of City of Tucson, Pima County,* 25 Ariz.App. 214, 542 P.2d 407 (1975).

[¶ 21] There are many Wyoming cases that have addressed Wyo. Const. art. 1, § 10, and the Sixth Amendment, both in relation to the right to counsel and other constitutional rights. Most of the cases that dealt with the right to counsel have followed a "critical stage" analysis in determining whether the right to counsel had accrued at a particular point in the proceedings. The developing path of state constitutional analysis as it pertains to Wyo. Const. art. 1, § 10 can be shown by reference to pertinent portions of these cases:

> We do not underestimate the importance to a defendant of the right to advice of counsel at the arraignment, which is an important step in the prosecution.

*James,* 196 P. at 1046.

> [O]ur constitution contains another section that guarantees the right of trial by jury in criminal cases. That section [Wyo. Const. art. 1, § 10] is similar to the 6th Amendment of the Federal Constitution.

*State v. Yazzie,* 67 Wyo. 256, 218 P.2d 482, 484 (1950).

> In 1967 the United States Supreme Court held that the Fourteenth Amendment of the United States Constitution made its Sixth Amendment guarantee of a speedy trial applicable to all states. *Klopfer v. North Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Hence, in recognition of the supreme law of the land, the United States Supreme Court decisions on speedy trials are accorded full credit in deciding the question presented in this portion of the appeal. In addition, it becomes the duty of this court to re-examine the previous decisions of this court in the light of our own constitutional guarantee and the recent and later United States Supreme Court interpretations of the constitutional guarantee of speedy trials.

*Stuebgen v. State,* 548 P.2d 870, 872 (Wyo. 1976).

> That a defendant is entitled to be represented by counsel at all stages of the proceeding is without question.

*Hoskins v. State,* 552 P.2d 342, 350 (Wyo. 1976), *cert. denied,* 430 U.S. 956, 97 S.Ct.

1602, 51 L.Ed.2d 806 (1977).[6]

A criminal defendant's right to effective counsel is inviolate and the court has a duty to provide such counsel. This duty "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell v. State of Alabama*, 287 U.S. 45, 53 S.Ct. 55, 65, 77 L.Ed. 158, 84 A.L.R. 527 [ (1932) ]; *Avery v. State of Alabama*, 308 U.S. 444, 60 S.Ct. 321, 322, 84 L.Ed. ·377 [ (1940) ]; *United States ex rel. Washington v. Maroney*, 3 Cir., 428 F.2d 10, 13 [ (1970) ]. The right of assistance by counsel necessarily includes a reasonable and adequate time for counsel to prepare * * *.

* * *

* * * [T]his court feels compelled to do as the United States Supreme Court has done in its approach to these cases to make our disposal based upon the factual situation which appears in each case without reliance upon per se rules or assumed presumptions.

*Adger v. State*, 584 P.2d 1056, 1058–59 (Wyo. 1978).

The person accused of the commission of a crime has the constitutional right to be represented by an attorney of his own choice. *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954); *Adger v. State*, Wyo., 584 P.2d 1056 [ (1978) ]. This is the construction given to the Sixth Amendment to the Constitution of the United States of America, and the same construction must be given Art. 1, § 10 of the Constitution of the State of Wyoming.

*Irvin v. State*, 584 P.2d 1068, 1070 (Wyo. 1978).

Section 10, Art. 1 of the Wyoming Constitution likewise provides for the right to counsel in criminal prosecutions and tracks the federal provision.

---

**6.** The majority opinion does not specify whether this right is based upon the state or the federal constitution. In a dissent, Justice Rose emphasizes the right to counsel at all critical stages of the proceedings, citing the Sixth Amendment and

*Auclair v. State*, 660 P.2d 1156, 1159 n. 6 (Wyo.), *cert. denied*, 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 249 (1983). "The basic contours of the right are identical in both state and federal contexts." *Id.* at 1160.

The Sixth Amendment right to counsel attaches only when adversarial criminal proceedings against an accused have been commenced.

*Brown v. State*, 661 P.2d 1024, 1029 (Wyo. 1983). "Prior to the Sixth Amendment right to counsel attaching, no violation of that Sixth Amendment right to counsel can occur." *Id.* at 1030.

We decline to extend the right to representation by counsel guaranteed by the Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution to the preindictment lineup stage of the criminal proceedings, and consequently we affirm.

*Charpentier v. State*, 736 P.2d 724, 724 (Wyo. 1987).

[T]he Wyoming Supreme Court has been confronted with a number of cases involving the question of when the right to counsel attaches. * * * In each case, we applied the rule and rationale set forth by the United States Supreme Court in *Kirby [v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) ]. Most recently in *State v. Heiner*, 683 P.2d [629] at 637 [ (Wyo.1984) ], we said:

"It is clear that in this jurisdiction a Sixth Amendment right to counsel attaches only when adversarial criminal proceedings have been commenced against an accused. It follows that * * * *evidence obtained* * * * *prior to the filing of the criminal complaint [was] not obtained in violation of [the defendant's] Sixth Amendment right to counsel.*" (Emphasis added and citation omitted.)

*Charpentier*, 736 P.2d at 725.[7]

In pursuing his claim that the inculpatory statements should have been sup-

---

United States Supreme Court precedent. *Hoskins*, 552 P.2d at 351–54 (Rose, J., dissenting).

**7.** In his dissent, Justice Urbigkit opined that, "[t]he fiction adopted in the recent United States

pressed, Best invokes both the Fifth and Sixth Amendments to the United States Constitution and Art. 1, §§ 10 and 11 of the Wyoming Constitution. The critical interrogation occurred prior to the filing of criminal charges against Best, and for that reason, his rights under the Sixth Amendment to the United States Constitution and the parallel provision, Art. 1, § 10 of the Wyoming Constitution, which also affords the right to counsel, are not implicated. A request for counsel made prior to the commencement of adversarial criminal proceedings does not invoke the right to counsel under the Sixth Amendment to the United States Constitution. *Brown v. State,* Wyo., 661 P.2d 1024 (1983). The same result must pertain under Art. 1, § 10 of the Wyoming Constitution. This view is consistent with that of the Supreme Court of the United States.

*Best v. State,* 736 P.2d 739, 742 (Wyo.1987).

With respect to Jandro's claim that he was denied his right, under the Sixth Amendment to the United States Constitution and Article 1, § 10 of the Constitution of the State of Wyoming, to confront witnesses against him, we adopt the rule articulated by the Supreme Court of the United States.

*Jandro v. State,* 781 P.2d 512, 523 (Wyo. 1989).

Article 1, § 10 of the Wyoming Constitution likewise provides for the right to counsel in criminal prosecutions and tracks the federal provision.

*Nelson v. State,* 934 P.2d 1238, 1240 (Wyo. 1997).

The Sixth Amendment right to counsel accrues at the time adversary judicial proceedings are initiated against the defendant. * * * Counsel is required not just at trial, but at "critical stages" both before and after trial in which the substantial rights of the accused may be affected. *Duffy [v. State],* 837 P.2d [1047] at 1052

[ (Wyo.1992) ] (*citing United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)); *Chavez v. State,* 604 P.2d 1341, 1347 (Wyo.1979), *cert. denied,* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980).

*Nelson,* 934 P.2d at 1240.

The right to a speedy trial is guaranteed to the criminally accused by the Sixth Amendment to the United States Constitution, made obligatory on the states by the Fourteenth Amendment. *Phillips v. State,* 597 P.2d 456, 460 (Wyo.1979). This right is also secured by Art. 1, § 10 of the Wyoming Constitution. *Id.* Although compliance with Rule 48 will go a long way in protecting a defendant's right to a speedy trial, it is also necessary to examine speedy trial issues in light of the constitutional factors which provide the underpinnings of the rule. *Hall v. State,* 911 P.2d 1364, 1370 (Wyo.1996).

[In that regard], [w]e have accepted the balancing test set out in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) * * *.

*Almada,* 994 P.2d at 304.

[T]he Fourteenth Amendment incorporated the Sixth Amendment right to counsel, and accordingly required the states to make appointed counsel available to indigent defendants in all "criminal prosecutions." * * * Article 1, § 10 of the Wyoming Constitution ... tracks the federal provision.

*Pearl v. State,* 996 P.2d 688, 689 (Wyo.2000) (*quoting Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)).

[W]e hold that the Sixth Amendment requires appointment of counsel for indigent probationers when the indigent probationer was entitled to be represented by an attorney [at judicial probation revocation proceedings].

*Pearl,* 996 P.2d at 692.

[¶ 22] These cases have been cited at length because they establish the precedent

Supreme Court opinions aside, a criminal prosecution is comprehensively commenced when the individual is arrested and hauled off to the local confinement facility. The accusatory stage and its intrinsic jeopardy has then commenced." *Charpentier,* 736 P.2d at 727 (Urbigkit, J., dis-

senting). He relies upon Wyo. Const. art. 1, § 10, as well as other state constitutional provisions to contend that adequate legal representation is "constrained" by the majority opinion. *Charpentier,* 736 P.2d at 725 (Urbigkit, J., dissenting).

for our decision herein. Several generalizations may be made. First, in many of the cases, there is only a Sixth Amendment analysis, with no Wyo. Const. art. 1, § 10 analysis. Second, even where Wyo. Const. art. 1, § 10 is cited, there is no separate state constitutional analysis. Third, where there is mention of both constitutions, the Sixth Amendment and Wyo. Const. art. 1, § 10 are almost uniformly considered to be "parallel provisions" with consistent interpretation and application. Fourth, even after *Saldana* in 1993, neither litigants nor this Court strayed much from federal precedent and the Sixth Amendment in addressing Wyo. Const. art. 1, § 10. And fifth, reference back to the Sixth Amendment and reliance upon United States Supreme Court precedent has been necessitated by the dearth of state constitutional history and the resulting failure to develop a "long tradition of independent analysis."

[¶ 23] One other case deserves special mention. In *Shongutsie*, 827 P.2d at 366–67, we held that, in conflict of interest cases involving one attorney's representation of multiple defendants, we would not follow the minimal federal standard under the Sixth Amendment of requiring an appellant to show prejudice by such multiple representation if he had failed to object in the trial court. Instead, we chose to enlarge the right to effective assistance of counsel under Wyo. Const. art. 1, § '10 by holding that prejudice would be presumed in all instances of such multiple representation. *Shongutsie*, 827 P.2d at 366–67. This result was based not so much on any discernment that the right to counsel is different in Wyoming as on the perception that the federal rule was difficult to implement. We preferred the ease of application of a presumptive rule, and the public policies it promoted.[8]

### THE RIGHT TO COUNSEL IN OTHER STATES

[¶ 24] In urging this Court to find a limited right to be represented by counsel before making the decision to submit to chemical testing, the appellant cites several cases from other states that have found such a right to exist. *Yerrington v. Anchorage*, 675 P.2d 649, 650 (Alaska App.1983) (*citing Copelin v. State*, 659 P.2d 1206 (Alaska 1983), *cert. denied*, 469 U.S. 1017, 105 S.Ct. 430, 83 L.Ed.2d 357 (1984)) (a statute and a court rule both require a reasonable opportunity to consult with counsel before chemical testing, the right being defined as a "limited statutory right"); *State v. Juarez*, 161 Ariz. 76, 775 P.2d 1140, 1144–45 (1989) (a criminal rule requires counsel "as soon as feasible after a defendant is taken into custody," but it also violates the Sixth Amendment and the state constitution not to allow access to counsel before the breath test); *Sites v. State*, 300 Md. 702, 481 A.2d 192, 196–98 (1984) (taking a chemical sobriety test is not a critical stage requiring a Sixth Amendment right to counsel, but due process under the Fourteenth Amendment and the state constitution requires a reasonable opportunity to communicate with counsel before making the decision); *Friedman v. Commissioner of Public Safety*, 473 N.W.2d 828, 837 (Minn.1991) (the chemical testing decision is a critical stage in the criminal proceeding, so there exists a state constitutional right to counsel); *State v. Sadek*, 552 N.W.2d 71, 73 (N.D.1996) (right to counsel not derived from federal or state constitution, but from state statute); *State v. Spencer*, 305 Or. 59, 750 P.2d 147, 154–56 (1988) (a person taken into formal custody is confronted with the full legal power of the state, regardless of whether a formal charge has been filed, and at that time, the person is "ensnared in a 'criminal prosecution'" and has the right to counsel); *City of Bellevue v. Ohlson*, 60 Wash.App. 485, 803 P.2d 1346, 1349 (1991) (a criminal rule requires an arrestee to be provided reasonable access to an attorney prior to submitting to chemical testing); *see also Busch v. Commissioner of Public Safety*, 614 N.W.2d 256, 258 (Minn. App.2000).

[¶ 25] Other states have reached a contrary result. Based on its own precedent of finding no distinction between the Sixth Amendment and the parallel provision of the New Mexico Constitution, the New Mexico

---

8. These policies were identified as discouraging dual advocacy by attorneys, the effective administration of justice, and assurance that all defendants will be fully apprised of their constitutional right to counsel free of any conflict of interest. *Shongutsie*, 827 P.2d at 367–68.

Supreme Court has held that there is no basis for interpreting that state's constitutional provision more broadly than the Sixth Amendment. *State v. Woodruff*, 124 N.M. 388, 951 P.2d 605, 609–11 (1997). The court also found that there is no separate due process violation under the Fourteenth Amendment because, in this situation, the right to counsel and the right to due process protect the same value, that being the right to fundamental fairness in the proceeding. *Woodruff*, 951 P.2d at 609–11. Likewise, the New Jersey Supreme Court has held that there is no state or federal constitutional right to counsel before the decision whether to submit to chemical testing. *State v. Leavitt*, 107 N.J. 534, 527 A.2d 403, 405 (1987).

[¶ 26] The implied consent decision is not a critical stage of the criminal prosecution under Sixth Amendment analysis, and there are no independent state grounds that require a different result. *Id.* at 407. The same determination was made in *State v. Allen*, 485 A.2d 953, 955–56 (Me.1984); *Fulmer v. Jensen*, 221 Neb. 582, 379 N.W.2d 736, 740 (1986); and *Dunn v. Petit*, 120 R.I. 486, 388 A.2d 809, 810–13 (1978). In Missouri, a DWUI arrestee's right to counsel at the chemical testing decision stage is statutory and not constitutional. *Brown v. Director of Revenue*, 34 S.W.3d 166, 171 (Mo.App.2000). In Idaho, the implied consent scenario is considered to be civil, rather than criminal, in nature, so the right to counsel has not been recognized under either the Sixth Amendment or the Idaho Constitution. *Matter of Triplett*, 119 Idaho 193, 804 P.2d 922, 923–24 (1990).

[¶ 27] As outlined in the Wyoming cases previously cited, this Court has followed the lead of the United States Supreme Court in *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), in finding that the right to counsel under the Sixth Amendment does not accrue until "adversarial criminal proceedings" have been initiated. The states that find there is no federal or state constitutional right to counsel at the time of the chemical testing decision generally follow the same reasoning in finding that the decision is not a critical stage in the criminal proceeding, and in finding that adversarial criminal proceedings do not begin until the formal charge has been filed. *See, e.g., State v. Hoch*, 500 So.2d 597, 598–99 (Fla.App.1986); *Allen*, 485 A.2d at 955–56; *State v. Delisle*, 137 N.H. 549, 630 A.2d 767, 767–68 (1993); *Leavitt*, 527 A.2d at 405; *Dunn*, 388 A.2d at 810–13; and *McCambridge v. State*, 778 S.W.2d 70, 71–77 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990).

[¶ 28] There are three reasons why the chemical testing stage is not a critical stage in criminal proceedings. First, the function of the Sixth Amendment right to counsel is to preserve the defendant's right to a fair trial, once adversarial criminal proceedings have been commenced by the filing of a formal charge. *Charpentier*, 736 P.2d at 725; *Delisle*, 630 A.2d at 768; *McCambridge*, 778 S.W.2d at 74. Second, the chemical testing decision is " 'not essentially "a lawyer's decision" but, on the contrary, can be made by a defendant in the absence of the assistance of counsel without any substantial prejudice to [the accused's] rights under the sixth amendment.' " *Delisle*, 630 A.2d at 768 (*quoting State v. Petkus*, 110 N.H. 394, 397, 269 A.2d 123, 125 (1970), *cert. denied*, 402 U.S. 932, 91 S.Ct. 1522, 28 L.Ed.2d 867 (1971)). And third, the "right" to refuse the test is not a right at all, but is, at most, a statutory privilege or an "option" which may be strictly regulated by the state. *Hoch*, 500 So.2d at 600–01; *State v. Reitter*, 227 Wis.2d 213, 595 N.W.2d 646, 659 (1999).[9]

---

9. Some cases intermingle Sixth Amendment critical stage concepts and Fourteenth Amendment due process concepts along with their state constitution equivalents.

The [United States] Supreme Court has not yet expressly reconciled the constitutional duality of the right to counsel guarantees as expressly provided in the Sixth Amendment and implicitly provided in the Fourteenth Amendment to guarantee a fair hearing.... Despite their often combining, and therefore confusing, the two principles ..., it appears that at least since *Gideon v. Wainwright*, [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)], the due process guarantee of counsel has been restricted to civil proceedings ..., quasi-civil proceedings ..., or appeals.... The Sixth Amendment's guarantee of counsel on the other hand has been restricted to proceedings that are

## CONCLUSION

[¶ 29] We find persuasive those cases that have declined to find in their state constitution an "enlarged" right to counsel that would extend to the time at which a DWUI arrestee is deciding whether to submit to chemical testing of his blood alcohol or controlled substance content. As in New Mexico, we have no basis in Wyoming for interpreting our state's constitutional provision as providing more protection than the Sixth Amendment. Wyoming has no constitutional history or pre-constitutional statutory law that suggests such an enlargement was intended by the framers of our constitution. There are no special circumstances in Wyoming that necessitate a broader right than what is provided by the Sixth Amendment. We have no significant precedent of such an interpretation.[10] As we said in *Charpentier,* 736 P.2d at 725, the appellant has "failed to demonstrate any compelling reason why this Court should depart from the established rule . . . ."

[¶ 30] There are also some specific reasons not to expand the right to counsel beyond its traditional extent and into the investigative, evidence-gathering period before a formal charge is brought. Such an extension would destroy the "bright line" rule whereby access to counsel under the Sixth Amendment and Wyo. Const. art. 1, § 10 is only required once charges are filed, leaving law enforcement wondering on a case-by-case basis whether counsel is required.[11] *See McCambridge,* 778 S.W.2d at 75–76. Further, the door would be opened to the difficulty of finding and appointing counsel for indigent defendants at all hours of the day and night for pre-chemical-testing advisements.

[15] [¶ 31] The answer to the certified question is "no." Wyo. Const. art. 1, § 10 does not give a defendant a limited right to consult with an attorney before deciding whether or not to submit to chemical testing for blood alcohol.

---

identified in the Sixth Amendment—"criminal prosecutions." *McCambridge,* 778 S.W.2d at 74. In *Reitter,* 595 N.W.2d at 659, the court reiterated its prior holding that there is no Sixth Amendment right to counsel at this stage, but then added that the due process protections of the Wisconsin Constitution do not extend to a DWUI arrestee who refuses to submit to a chemical test, because refusal is not a right, but a privilege.

10. *Shongutsie,* 827 P.2d 361, is a fact-driven departure from our general rule of equating the Sixth Amendment and Wyo. Const. art. 1, § 10.

11. The accused at this stage does have the protections of the Fifth Amendment, *Miranda,* and Wyo. Const. art. 1, § 11. For a thoughtful discussion of the differences between the Fifth and Sixth Amendment rights to counsel, the critical stage concept, and an analysis of implied consent as a search and seizure issue, *see Friedman,* 473 N.W.2d at 838–47 (Coyne, J., dissenting). Similar reasoning is found in *Delisle,* 630 A.2d at 767–68, where the critical stage analysis of implied consent cases is used in holding that the taking of blood and hair samples via a search warrant is not a critical stage in the criminal prosecution.