2012 WY 161

Kyle F. REGAN, Appellant (Petitioner),

v.

STATE of Wyoming, ex rel., WYOMING DEPARTMENT OF TRANSPORTATION, Appellee (Respondent).

Joseph B. Parsons, Appellant (Petitioner),

v.

State of Wyoming, ex rel., Department of Transportation, Appellee (Respondent).

Nos. S–12–0074, S–12–0075.

Supreme Court of Wyoming.

Dec. 20, 2012.

Representing Appellants: R. Michael Vang of Fleener & Vang LLC, Laramie, WY.

Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; and Michael T. Kahler, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN *, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1]   This opinion encompasses two separate appeals from two separate appellants, but both appeals challenge the implied consent advisement as affected by the same Laramie ordinance.  While the appeals have not been consolidated, we join them for the purposes of opinion.

[¶ 2]   Kyle Regan and Joseph Parsons, in separate incidents, were both arrested for driving while under the influence (DWUI). Following their arrests, each appellant consented to chemical testing.  Regan's test showed that he had a 0.26 percent blood alcohol concentration, and Parsons' test showed that he had a 0.16 percent blood alcohol concentration.  Based on the test results, each appellant had his driver's license administratively suspended.  Each appellant likewise challenged the administrative suspension, claiming that his consent to chemical testing was invalid because he had been threatened with jail time under a local Laramie ordinance if he did not consent to the testing.  In each case, the Office of Administrative Hearings (OAH) issued an order upholding the suspension, and each appellant appeals that order.

### ISSUES

[¶ 3]   Regan and Parsons both present the same issues on appeal:

I.   This matter should be stayed pending resolution of pending declaratory judgment action involving enforcement of Laramie Municipal Ordinance 1592.

II.   [Were Appellants] read proper implied consent advisements after being arrested for a DWUI under Laramie Enrolled Ordinance 1592?

III.   Does the creation of minimum mandatory jail time for an alleged refusal to submit to a chemical test under Laramie's new DWUI constitute a "critical

stage" for purposes of application of the Wyoming right to an attorney and distinguish the case from *Mogard v. City of Laramie,* 2001 WY 88, ¶¶ 26–31, 32 P.3d 313, 324–25 (Wyo.2001)?

IV.   Are Laramie's new drinking and driving laws in conflict with State law and therefore preempted?

### FACTS

*Kyle Regan*

[¶ 4]   On April 17, 2011, at 2:23 a.m., Officer Christopher Cleven was on patrol in Laramie, Wyoming, when he observed a vehicle being driven erratically.  Officer Cleven followed the vehicle for several blocks and then initiated a traffic stop.  He made contact with the driver, Kyle Regan, and noticed a strong odor of alcohol coming from the vehicle.  Officer Cleven also observed that Regan's eyes were bloodshot and glassy and that Regan had difficulty retrieving his driver's license and proof of insurance.

[¶ 5]   Officer Cleven asked Regan to exit the vehicle and then directed him through standardized field sobriety tests.  Regan performed poorly on the tests and showed a lack of balance.  Officer Cleven asked Regan if he felt that he had had too much to drink to be driving, and Regan responded, "Yes I have and I'm (sic) genuinely do not know what I was thinking."  Officer Cleven then arrested Regan for DWUI and transported him to the Albany County Detention Center.

[¶ 6]   At the detention center, Officer Cleven read Regan the Wyoming Implied Consent Advisement, which informed Regan that failure to submit to chemical testing would result in a six-month driver's license suspension for a first offense and an eighteen-month suspension for subsequent refusals or offenses.  Regan refused to submit to chemical testing.  Officer Cleven described the subsequent events as follows:

* * *  I then read him the Chemical Test Refusal Warning Form [1] at which time he

---

\* *Justice Golden retired effective September 30, 2012.*

1.   The record contains no document entitled "Chemical Test Refusal Warning Form." It is our understanding, given the context of this appeal,

and given that the warning form was read after Regan's initial refusal, that the form warned of the penalties associated with Laramie's implied consent ordinances.  The municipal ordinances

asked if he could think about it and after approximately ten minutes he advised me that he would provide a breath sample and I gave him the Wyoming Implied Consent Advisement in which he did sign this agreeing to a breath sample, however it should be noted that he originally signed the refuse to submit to any chemical test and he then scratched this out and signed the line above it stating that he would agree.

[¶ 7]   After obtaining Regan's consent to the chemical testing, Officer Cleven administered the test.   The chemical breath test showed that Regan had a 0.26 percent blood alcohol concentration, and based on those results, Officer Cleven issued Regan a citation for DWUI, confiscated his driver's license, and issued him a Notice of Suspension and Temporary Wyoming Driver's License. On April 26, 2011, the Wyoming Department of Transportation (WYDOT) notified Regan that due to his chemical testing results, WYDOT was suspending his driver's license for a period of ninety days, beginning on May 17, 2011.

### Joseph Parsons

[¶ 8]   On the evening of May 19, 2011, Officer Jay Peyton was on patrol in Laramie, Wyoming, when he observed a pickup truck traveling north on 9th Street in excess of the posted speed limit.   Officer Peyton turned around and followed the truck to make a traffic stop.   While following the truck, Officer Peyton observed the truck "swerving badly" in its lane and at one point nearly hit a parked vehicle.   Officer Peyton initiated a traffic stop and made contact with the truck's driver, Joseph Parsons.   He noticed a strong odor of alcohol coming from the truck and also observed that Parsons' eyes were bloodshot and glossy and his eyelids were droopy. In responding to Officer Peyton's initial questions, Parsons slurred his words, had

difficulty forming complete sentences and had difficulty retrieving his driver's license.

[¶ 9]   Officer Peyton asked Parsons to exit the vehicle and then directed him through standardized field sobriety tests.   Parsons failed the sobriety tests and based on that failure and "the totality of the circumstances," Officer Peyton then arrested Parsons for DWUI and transported him to the Albany County Detention Center.

[¶ 10]   Officer Peyton described his advisements to Parsons and the subsequent events as follows:

I transported Parsons to the Albany County Detention Center (ACDC) for booking. Once at the ACDC I read Parsons the Wyoming Implied Consent Advisement and requested that he agree to a chemical breath test.   Parsons agreed to the chemical breath test.   I checked Parsons' mouth for any foreign objects and found nothing. I waited the required 15 minute observation period and started the test.   Just before the first breath sample was to be taken Parsons asked for a drink of water. I explained to Parsons that he was not allowed to have anything in his mouth for at least 15 minutes prior to the chemical breath test and the test had already been started.   Parsons stated that he wanted to speak with his lawyer.   I explained to Parsons that he did not have the right to speak with his lawyer prior to taking the breath test in order to decide whether or not to take the test.   Parsons stated that he had changed his mind and that he was refusing to take the chemical breath test. I read Parsons the Refusal of a Chemical Test Advisement.[2]   Parsons changed his mind again and stated that he would take the chemical breath test.   Parsons registered at a .169% BAC according to the Intoximeter.   Parsons was transferred over to the custody of the deputies at ACDC.

make it a crime to refuse the chemical testing and provide penalties that include up to seven days in jail for a first offense and up to thirty days in jail for subsequent offenses.

2.   The record contains no document entitled "Refusal of a Chemical Test Advisement."   As with

the advisement that Regan was given, it is our understanding, given the context of this appeal, and given that the warning form was read after Parsons' initial refusal, that the form warned of the penalties associated with Laramie's implied consent ordinances.

[¶ 11] Based on Parsons' chemical testing results, Officer Peyton cited Parsons for DWUI and issued him a Notice of Suspension and Temporary Wyoming Driver's License. On May 23, 2011, the Wyoming Department of Transportation (WYDOT) notified Parsons that due to his chemical testing results, WYDOT was suspending his driver's license for a period of ninety days, beginning on June 19, 2011.

### OAH Ruling

[¶ 12] Regan and Parsons each requested a hearing to contest WYDOT's administrative suspension of his driver's license, and the OAH held separate evidentiary hearings for each appellant. Before the OAH, neither Regan nor Parsons contested the lawfulness of law enforcement's initial contact or the probable cause for their arrests. They instead challenged the implied consent advisement they were given, contending that the advisement was improper because it went beyond the advisement prescribed by statute and included a warning of the consequences under Laramie's implied consent ordinances. They also challenged the validity of the Laramie ordinances, arguing that the ordinances conflicted with state law, were vague and overbroad, and infringed on the constitutional right to an attorney.

[¶ 13] The OAH issued orders upholding the administrative suspensions of Regan's and Parson's driver's licenses. The orders were separate but virtually identical. The OAH rulings explained:

> The suspension of driving privileges is civil in nature and is controlled by Wyoming law. In order for a person to make a choice to take or refuse a chemical test, the person must be informed of the consequences of taking or refusing the chemical test as provided for under the Wyoming *implied consent* law. The evidence in this matter clearly established [the officer] arrested Regan[/Parsons] for DWUI, read Regan[/Parsons] the *implied consent* advisement required under Wyoming law and Regan[/Parsons] eventually agreed to submit to a chemical test. As such, the proposed suspension action should be upheld. The issues and argument raised by Re-

gan's/[Parson's] counsel have no merit in this civil proceeding. The arguments may have some bearing in the underlying criminal action in the Laramie Municipal Court but that issue is not one this Office has authority upon which to rule. Additionally, it should be noted Regan[/Parsons] was specifically notified if he submitted to a chemical test and if the result indicated he was under the influence of alcohol, he may be subject to criminal penalties. Regan[/Parsons] was put on notice his decision to take a chemical test could result in criminal penalties. Regan/[Parsons] was given the proper advisement and the proposed suspension action should be upheld. (Emphasis in original.)

[¶ 14] Regan and Parsons each filed a petition for judicial review, and the district court issued separate orders affirming their suspensions. In so ruling, the district court upheld the OAH determination that each appellant was read the proper implied consent advisement. The court also affirmed that the OAH was without jurisdiction to consider the challenges to the validity of Laramie's implied consent ordinances, and it concluded that because the OAH did not have such jurisdiction, the district court likewise lacked jurisdiction to address those issues. The district court also denied each appellant's request to stay his appeal pending resolution of a separate declaratory judgment action challenging the validity of Laramie's ordinances.

## STANDARD OF REVIEW

[¶ 15] We review administrative decisions in accordance with the Wyoming Administrative Procedure Act, which provides:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c)(ii) (LexisNexis 2011).

[¶ 16]  Neither Regan nor Parsons raises an issue of fact or evidentiary weight in this appeal, and the appeal thus presents only questions of law.  " 'We review an agency's conclusions of law *de novo*, and will affirm only if the agency's conclusions are in accordance with the law.' " *Kenyon v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2011 WY 14, ¶ 13, 247 P.3d 845, 849 (Wyo.2011) (quoting *Moss v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010)).  In an appeal from a district court's appellate review of an administrative decision, we review the case as if it came directly from the hearing examiner, affording no deference to the district court's decision. *Deloge v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2011 WY 154, ¶ 5, 264 P.3d 28, 30 (Wyo.2011); *In re Kaczmarek*, 2009 WY 110, ¶ 7, 215 P.3d 277, 280 (Wyo.2009).

## DISCUSSION

### A.  *Implied Consent Advisement*

[¶ 17]  Wyoming law provides that every driver on Wyoming roads is deemed to have consented to chemical testing upon an arrest for DWUI. *Escarcega v. Wyo. Dep't of Transp.*, 2007 WY 38, ¶ 9, 153 P.3d 264, 268 (Wyo.2007) (citing Wyo. Stat. Ann. § 31–6–102).  The law in effect when Regan and Parsons were arrested for DWUI required that upon a lawful DWUI arrest, the arrested person must be advised that:

(A) His failure to submit to all required tests requested by the peace officer shall result in the suspension of his Wyoming driver's license or his privilege to operate a motor vehicle for a period of six (6) months for a first offense or eighteen (18) months for a second or subsequent offense and he may be required to drive only vehicles equipped with an ignition interlock device as provided by W.S. 31–6–107;

(B) If a test is taken and the results indicate the person is under the influence of alcohol or a controlled substance, he may be subject to criminal penalties, his Wyoming driver's license or his privilege to operate a motor vehicle shall be suspended for ninety (90) days and he may be required to drive only vehicles equipped with an ignition interlock device;

(C) After submitting to all chemical tests requested by the peace officer at a place and in a manner prescribed by and at the expense of the agency employing the peace officer, the arrested person may go to the nearest hospital or clinic and secure any additional tests at his own expense[.]

Wyo. Stat. Ann. § 31–6–102(a)(i)–(ii) (LexisNexis 2009).

[¶ 18]  The appellants do not contest that they were read the statutorily required implied consent advisements in their entirety.  Their objection is instead that the advisements went beyond the statutory advisements and improperly included a warning that, under the Laramie ordinances, a refusal to submit to chemical testing may result in additional penalties including up to seven days in jail.  The appellants thus argue that their chemical test results may not be used to support their administrative suspensions because their submission to the testing was coerced and they were not allowed to speak with an attorney.

[¶ 19]   We reject the appellants' arguments.  First, with respect to their administrative suspensions, it is impossible for the appellants to articulate prejudice from allegedly being coerced into the testing.  This Court has observed as follows concerning the purpose to be served by the implied consent advisement:

> The Legislature has mandated specific warnings to all drivers that there are consequences to their non-commercial driver's licenses for refusing to submit to chemical testing subsequent to an arrest for DWUI.  The prospect of those consequences encourages drivers to submit to chemical testing, and serves to aid the state in achieving the legitimate goals of removing drunk drivers from the road and imposing proper penalties on offenders.  *Mackey v. Montrym*, 443 U.S. 1, 18, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321 (1979).

*Escarcega*, ¶ 19, 153 P.3d at 270.

[¶ 20]   In other words, the implied consent advisement is itself a coercive device.  It encourages a driver to submit to chemical testing by imposing a greater administrative penalty for refusing the chemical testing, a minimum six-month suspension, than it imposes for a test result that confirms the driver was under the influence of alcohol, a ninety-day suspension.  Wyo. Stat. Ann. § 31–6–102(a)(ii).  Thus, if the appellants had refused the testing, as they have indicated they would have done had they not been threatened with jail time for their refusals, their administrative suspensions would have been a minimum of three months longer than the administrative suspensions that were imposed on them.  Thus, at least with respect to the appellants' administrative suspensions, the alleged coercion did not expose them to an enhanced penalty, and in fact was to their benefit rather than their detriment.[3]

[¶ 21]   We further reject the appellants' arguments because they ignore the distinction between an administrative proceeding and a criminal prosecution.  *See Glasrud v. City of Laramie*, 934 P.2d 1242, 1246 (Wyo.1997) ("Driver's license suspensions are civil proceedings, separate and distinct from DWUI prosecutions.").  Because the OAH review of the driver's license suspensions was an administrative proceeding, its scope was statutorily prescribed and limited:

> (b) The scope of a hearing for the purposes of this act shall cover the issues of whether a peace officer had probable cause to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon a public street or highway in this state in violation of W.S. 31–5–233(b) or any other law prohibiting driving under the influence as defined by W.S. 31–5–233(a)(v), whether the person was placed under arrest, whether he refused to submit to a test upon request of the peace officer or if he submitted to a test whether the test results indicated that the person had an alcohol concentration of eight one-hundredths of one percent (0.08%) or more, and ***whether, except for the persons described in this act who are incapable of refusing, he had been given the advisements required by W.S. 31–6–102(a)(ii).***

Wyo. Stat. Ann. § 31–6–103(b) (LexisNexis 2009) (Emphasis added.).

[¶ 22]   The OAH ruled that Regan and Parsons were each given the advisements required by Wyo. Stat. Ann. § 31–6–102(a)(ii), and the appellants do not contest that they were given those advisements.  The OAH therefore ruled in accordance with the law and evidence in finding that the statutorily required implied consent advisements were given.  To the extent that Regan and Parsons wish to extend their challenge to the constitutionality or validity of the Laramie municipal ordinances, we agree with the OAH and the district court that such a challenge was beyond the scope of the OAH proceeding and must be brought in a separate declaratory judgment action or in the criminal proceeding on the DWUI citation.  *See Sandoval v. State ex rel. Wyo. Dep't of Transp.*, 2012 WY 160, ¶ 15, 291 P.3d 290 (Wyo.2012) ("Wyoming law does not require peace officers to give further advisements

---

**3.**  The appellants' criminal prosecutions for DWUI are not before the Court, and we therefore do not address the coercion issue as it relates to those prosecutions.

depending upon municipal ordinances and does not authorize the OAH to consider municipal ordinances when determining whether to rescind or sustain a driver's license suspension."); *Williams v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2009 WY 57, ¶ 18, 205 P.3d 1024, 1032 (Wyo. 2009) ("The law is clear that administrative agencies have no authority to determine the constitutionality of a statute and that neither the district court nor this Court has jurisdiction on appeal of agency action to consider the issue.").

[¶ 23] Having concluded that the OAH was without jurisdiction to rule on the challenges to the Laramie implied consent ordinances, we must likewise conclude that this Court is without jurisdiction to consider and rule on those issues. *Escarcega*, ¶ 22, 153 P.3d at 270 (neither district court nor this Court has authority in an administrative agency appeal to address law's constitutionality or validity).

### B. *Regan/Parsons Requests to Stay Appeal*

[¶ 24] The appellants requested that this Court stay consideration of this appeal until resolution of a separately pending declaratory judgment action challenging the constitutionality and validity of the Laramie implied consent ordinances. We agree with the district court that there is no basis for such a stay. As discussed above, the issue of the validity of the Laramie ordinances is outside the scope of the administrative suspension. The question before the OAH was a narrow one, and the OAH resolved that question in accordance with the applicable law and the OAH's authority. The appellants' challenges to the Laramie ordinances may affect their criminal conviction for the DWUI citations, but it will have no affect on the outcome of this appeal.

### CONCLUSION

[¶ 25] The OAH ruled in accordance with law in determining that Regan and Parsons were given the statutorily required implied consent advisements, and it properly declined to rule on their remaining contentions as beyond the scope of the administrative proceeding and outside the jurisdiction of the OAH. We thus affirm.